

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-31-2006

# Heller v. Elizabeth Forward

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-2046

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Heller v. Elizabeth Forward" (2006). *2006 Decisions.* Paper 1030.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1030

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 05-2046, 05-2464
_____

POLLY ANN HELLER;
DARLA MARRACCINI;
PENNY NATALE

v.

ELIZABETH FORWARD SCHOOL DISTRICT,

Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania

(D.C. No. 04-145)
District Judge: The Honorable Thomas M. Hardiman
_____

ARGUED APRIL 24,2006


BEFORE: SCIRICA, Chief Judge, and  NYGAARD,  Circuit Judges,
and YOHN,* District Judge.

(Filed May 31, 2006)
_____

<hr>

*Honorable William H. Yohn, Jr., Senior District Judge for the United States
District Court for  the Eastern District of Pennsylvania, sitting by designation.

John W. Smart, Esq. (Argued)
Todd P. Prugar, Esq.
Andrews and Price
1500 Ardmore Boulevard, Suite 506
Pittsburgh, PA 15221

Counsel for Appellant


Colleen R. Johnston, Esq. (Argued)
Rothman Gordon
310 Grant Street, 3rd Floor
Pittsburgh, PA 15219

Samuel J. Cordes, Esq.
Ogg Cordes Murphy & Ignelzi
245 Fort Pitt Boulevard
Pittsburgh, PA 15222

Counsel for Appellee

_____

OPINION OF THE COURT
_____


NYGAARD, Circuit Judge.

A jury returned a verdict in favor of three teachers who had sued the Elizabeth Forward School District alleging violations under the Age Discrimination in Employment Act, The Equal Pay Act, and state claims alleging violations of the Pennsylvania Human Relations Act. The School District appeals. We will affirm.


**I.**

2

The School District's salary scale and the collective bargaining agreement between the School District and the teachers' union, sets different "steps" in salary depending on a teacher's experience, education, and teaching certification area. When the School District hired plaintiffs, they were all over the age of fifty years old and they were all hired at step 1 of the District's salary scale. They alleged that after the School District hired them as teachers, it hired seven other teachers ("comparators"), five of whom were male and all of whom were younger, with substantially the same qualifications as Plaintiffs, at higher salary steps.

After discovery, the School District filed a motion for summary judgment, which the District Court denied. With respect to the ADEA claim, the District Court determined that "[a] rational trier of fact could either disbelieve the employer's articulated legitimate reasons or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions." With respect to the EPA claim, the District Court concluded that the plaintiffs had adduced enough evidence from which a reasonable trier of fact could conclude that a *prima facie* case of discrimination had been made. Additionally, the District Court concluded that the School District failed to submit sufficient evidence to demonstrate that the salary differences were due to some factor other than sex.

The case went to trial and, after the District Court denied the School District's motion for a directed verdict, a jury awarded verdicts in favor of all three

3

teachers. Subsequently, the School District renewed its motion for judgment as a matter of law, which was denied. With respect to damages, Plaintiffs sought interest back to when they were hired, liquidated and punitive damages, and equitable relief that gave them credit for experience outside the School District. The District Court granted these requests. The School District timely appealed, and all the orders (from summary judgment through post-trial damages) were consolidated in this appeal.

**II.**

A.

The School District concedes that plaintiffs have established a prima facie case of age discrimination under the ADEA. They believe, however, that they have adequately vitiated plaintiffs' prima facie case of age discrimination with a legitimate non-discriminatory reason for the salary discrepancies, and that the District Court incorrectly required them, at the summary judgment stage, to conclusively prove this non-discriminatory reason as opposed to merely proffer it.

The School District is of course right that claims under the ADEA follow the burden-shifting sequence set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), which does not require conclusive proof of a non-discriminatory reason to rebut a prima facie case. However, once a defendant has proffered a non-discriminatory reason, a plaintiff will survive summary judgment if she

4

adduces evidence that would allow a factfinder to disbelieve the proffered non-discriminatory reason. Here, plaintiffs met this burden.

It is the School District's practice that teachers are generally hired at step 1 of the salary scale, regardless of whether they teach elementary school or high school. However, the School District argued that it hired teachers at different salaries because "teacher certifications in sciences or special education that many of the younger teachers possess," combined with "the relative scarcity of these certifications justified a higher starting salary." It is true that the School District may hire a teacher at a step higher than step 1. For example, it is permissible for the School District to hire a teacher at a higher salary step where that teacher possesses qualifications for which the School District is especially in need. Thus, nothing prohibits the School District from hiring a teacher who possesses a teaching certification in physics at a higher salary step because the School District lacks a high school physics teacher, as demand may play a role in the School District's decision to hire a certain teacher at a higher salary step.

The District Court, however, determined that plaintiffs had submitted evidence tending to cast doubt on the School District's reason for its employment decisions, chiefly that the younger teachers hired had teaching certifications that were much rarer, and in greater demand, than those of the plaintiffs. The plaintiffs offered evidence that school board members were unable to articulate this reason when deposed and that, at least with respect to one comparator, Ms. Stock, the School District did not

5

follow its own logic. School board member Ronald Skrinjorich testified that the board members were "basically ignorant to the fact of pay levels" and that he was unaware of any policy of starting teachers with scarce certifications at higher pay levels. He also opined that "he did not really know why a teacher would be hired at a pay level higher than Level 1 and that he would have supported Plaintiffs' request for a higher pay level because 'if you give it to one, you give it to all.'" The District Court also concluded that there was no evidence whatsoever to support the claim that the certifications of the younger teachers are more scarce than those of the plaintiffs. In light of this countervailing evidence, we think it certainly reasonable that a factfinder could disbelieve the School District's articulated explanation for the hiring discrepancies and, accordingly, we will affirm the District Court's denial of summary judgment as to the ADEA claim.

**B.**

The School District next contends that the District Court erroneously determined that teachers with different teaching certificates could be considered comparators for purposes of an EPA claim. Because they appeal from a denial of summary judgment, the School District plies the argument that the District Court erred when it declined to find, as a matter of law, that teachers with different teaching certificates cannot be considered comparators. 24 P.S. § 12-1202, states that "No teacher shall teach, in any public school, any branch which he has not been certified to teach." Thus, according to the School District, "[i]f [the plaintiff teachers] could not legally

6

perform the same job as these [comparator] teachers . . . they could not be sufficiently comparable to these teachers, and, therefore, could not support any discrimination claim by comparing themselves to these [comparator] teachers." This argument misses the mark.

When making out a prima facie case, a plaintiff need only show that the jobs being compared are substantially equal, not necessarily that they are identical. *Forsberg v. Pacific Northwest Bell Telephone Co.*, 840 F.2d 1409, 1414 (9th Cir. 1988). The EPA defines what constitutes equal work as jobs that require equal skill, effort, and responsibility. Additionally, when a court assesses the substantial equality between jobs, it should rely on actual job performance and content rather than job descriptions. Moreover, because of the heavily fact-driven character of the inquiry, substantial equality must be determined on a case-by-case basis. Depending on the facts and the evidence presented, the proper comparator might be another teacher within the same certification class. A school district may have a particular need, justifying pay differentials, to hire teachers certified in specific subject areas. Accordingly, in some circumstances, plaintiffs in one certification class claiming age or sex discrimination may not properly be able to use a teacher in another certification class as a comparator. Because of this heavy factual determination, however, the presence of a statute limiting who can teach specific subjects is not determinative for purposes of assessing whether jobs are similarly situated for an EPA claim. This is especially the case where, as here, the School District had a policy of

starting all new teachers, irrespective of certification, at the same pay rate. At all events, because of the factual nature of the inquiry, the presence of the proffered statute is not determinative for purposes of an EPA prima facie claim and the District Court did not err in denying the motion for summary judgment and concluding that whether the jobs are similarly situated is a fact issue appropriate for the jury.

## C.

We quickly dispose of the School District's claim that, as a matter of law, the District Court erred by determining that a librarian who holds "an instructional certificate in library sciences may not be considered a teacher," by noting that the District Court made no such ruling. By framing the District Court's decision to allow a jury to reach its own decision regarding the similarity between plaintiffs and the librarian as a decision that a librarian could never be considered a comparator, the School District mischaracterizes the nature of the District Court's ruling. In fact, the District Court properly allowed evidence from both sides on the question whether a librarian should be considered similarly situated to plaintiffs under the EPA, consistent with both the fact-driven analysis such an inquiry presents and the manner in which other teacher-comparators were analyzed.

## D.

The School District's appeal from the denial of its motion for judgment as a matter of law is also unavailing. Here, as we noted earlier, the plaintiffs established their prima

8

facie case for both their EPA and ADEA claims. Therefore, any claim by the School District that the plaintiffs had no evidence that any of the comparator teachers were hired at higher than step 1 because of their gender or age is inapt.

Recognizing this, the School District additionally argues that "the claim that the School District provided inconsistent reasons for its decision finds no support in the record," thus contesting the jury's conclusion to the contrary on the EPA and ADEA claims. We disagree. Their argument is easily refuted by the testimony offered by both the superintendent and the school board members that was either contradictory or elusive with respect to the reasons behind the salary discrepancies. For instance, at trial Superintendent Mueller was unable to explain what the School District had meant when, in its answer to the PHRC complaint, it proffered three reasons for the hiring discrepancies: he could not explain what "applicable law" could have required the salary differences, he did not know who had suggested "experience" as a possible justification, and he admitted that the reason given for the hiring of Ms. Stock at a higher level was false. He also testified that the "specialized certification" rationale for the hiring of the comparator teachers was new and that it did not apply to Ms. Stock even though in the School District's answer, he had claimed that it did. He also testified that the School District had changed its reason for the hiring discrepancies. Furthermore, when pressed on his claim that the scarcity of applicants necessitated the higher salaries, he was unable to testify as to how many other teachers had applied for the position or even how many

9

were considered. He also suggested that hiring Ms. Stock at a higher salary step was motivated by loyalty for her short-term substitute teaching. Additionally, three school board members testified that they did not know why many of the teachers were hired at their pay steps.

We could go on, but in short, viewing the evidence most favorably to the prevailing party, it is clear that a reasonable factfinder could have found that the School District's proffered nondiscriminatory reason was not proved, and that the record is not critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief to plaintiffs. In fact, what emerges most clearly from the trial transcript is that the School District had no clear policy or procedures that it consistently followed for hiring its teachers and, accordingly, its *ex post* attempts to justify the discrepancies were unpersuasive and not believable. Because the record clearly suggests that there was no cohesive or consistent answer to the question why the comparator teachers were hired at significantly higher salaries, a jury could have found that the School District's proffered nondiscriminatory reasons were unbelievable, and, consequently, we will affirm the District Court's denial of the motion for judgment as a matter of law.

**E.**

The District Court granted plaintiffs' request to be placed higher up on the pay scale, in line with their comparators. It is well settled that the District Court has discretion

10

to fashion equitable relief to effectuate the purposes of the Title VII statutory scheme, specifically, in order to award make-whole damages.  Moreover, where, as here, the jury makes explicit findings that, had the discrimination not occurred, the plaintiffs would have been at higher salary steps, a District Court may appropriately fashion an award of damages to support this finding.   Thus, the District Court's decision here to  place the plaintiffs in the same position as their comparators was not an abuse of discretion.

## F.

The School District finally attempts to manufacture a conflict between two of our cases concerning the applicability of damages in ADEA cases.  They claim that the District Court erred in awarding liquidated damages under the ADEA both because the liquidated damages are prohibited under the ADEA and because the School District is a government entity.  The School District's argument that the District Court's award was impermissible is foreclosed by our decision in *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366 370 (3d Cir. 2004), where we determined that there is no question that liquidated damages are acceptable under the ADEA.  *Potence*, 54 F.3d at 372 ("[W]hen a jury finds that an employer willfully violated the ADEA, the basic damages award may be doubled under [the] liquidated damages provision.").  Additionally, this remedy is available against municipalities like the School District.  *See id*. ("[T]he language of the ADEA itself makes it clear that Congress intended to subject municipalities like the

School District to the liquidated damages provision of the ADEA."). Consequently, the District Court's award of liquidated damages, as a legal matter, was proper .

In an attempt to avoid the effect of this settled law, however, the School District insists that *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1100 (3d Cir. 1995) conflicts with the rule that liquidated damages are acceptable under the ADEA. Even a mere cursory reading of *Starceski* disabuses this claim. The only question that the Court addressed in *Starceski* was whether pre-judgment interest may be awarded along with liquidated damages. *Starceski*, 54 F.3d at 1101 (concluding that awards of pre-judgment interest and liquidated damages are permissible under the ADEA). The question was not whether liquidated damages are appropriate under the ADEA. In fact, the Court expressly allowed a grant of liquidated damages under the ADEA. *Id*. at 1102 ("The ADEA incorporates the FLSA's liquidated damages provision."). Accordingly, the District Court's grant of liquidated damages in this case was correct.

## IV.

In summary, and for the reasons set forth above, the judgment of the District Court will be affirmed.

12