Jamie G. HARE

v.

John POTTER, Postmaster General, United States Postal Service.

Civil Action No. 02–CV–7373.

United States District Court, E.D. Pennsylvania.

Nov. 30, 2007.

Jordan Yeager, Boockvar & Yeager, Bethlehem, PA, for Jamie G. Hare.

Karen Lee Tomlinson, U.S. Attorney's Office, Philadelphia, PA, for John Potter.

### MEMORANDUM OPINION

TIMOTHY R. RICE, United States Magistrate Judge.

This case involves the issue of what equitable relief, if any, is available when a jury finds a defendant liable for creating a retaliatory hostile work environment and awards no compensatory damages to a plaintiff who was not constructively discharged. For the following reasons, I

deny back pay damages, but grant equitable relief in the form of enhanced training for certain managers in the United States Postal Service and a requirement that the Postal Service post notices of the verdict in certain regional offices.

In 2002, plaintiff Jamie Hare filed a Title VII action against defendant. The United States Court of Appeals for the Third Circuit reversed the District Court's grant of summary judgment for defendant and remanded as to three claims: whether defendant retaliated against plaintiff for not selecting her for a career advancement program; whether defendant retaliated against plaintiff by creating a hostile work environment; and whether defendant retaliated against plaintiff based on her gender. *Hare v. Potter*, 220 Fed.Appx. 120 (3d Cir.2007).

After the parties agreed to drop the gender retaliation claim, a jury returned a split verdict in September, 2007, ruling for defendant on the career advancement claim and ruling for plaintiff on the hostile work environment claim. The jury awarded no compensatory damages, and pursuant to *Spencer v. Wal–Mart Stores, Inc.,* 469 F.3d 311, 315 (3d Cir.2006), I reserved the issue whether any equitable claim, such as back pay, should be awarded.

### DISCUSSION

I. *Back Pay*

A. *Constructive Discharge and Back Pay Award*

 Back pay is a remedy available to prevailing Title VII plaintiffs. *Spencer,* 469 F.3d at 315. It is a form of equitable relief awarded at the "discretion of the court." *Id.*[1] Back pay is designed to make

---

1. *Accord Slack v. Havens,* 522 F.2d 1091, 1094 (9th Cir.1975) ("[T]he award of back pay is an integral part of the equitable remedy of reinstatement ..."); *Johnson v. Ga. Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969) (same), *overruled on other grounds by Griffin v. Dugger,* 823 F.2d 1476 (11th Cir. 1987); *Smith v. Hampton Training Sch. for*

a plaintiff whole, *Gunby v. Pa. Elec. Co.*, 840 F.2d 1108, 1122 (3d Cir.1988) (quoting *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)), and "restore the plaintiff . . . to the position he otherwise would have been in absent discrimination." *Gunby*, 840 F.2d at 1122. Back pay is appropriate where the plaintiff establishes "the discrimination was . . . found to have some concrete effect on the plaintiff's employment status, such as a denied promotion, a differential in compensation, or termination." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 254, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The amount of back pay awarded is the difference between the amount of wages and benefits a plaintiff would have earned absent the discrimination, and the amount the plaintiff actually earned. *See Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 156 (3d Cir.1999); *Gunby*, 840 F.2d at 1122–24.[2]

 *Spencer* is the Third Circuit's most recent discussion of the interplay between back pay awards and constructive discharge in employment discrimination cases. The Court held a plaintiff cannot recover back pay for a hostile work environment claim absent actual or constructive discharge, meaning the plaintiff must be either fired or forced to quit due to the discriminatory conduct.[3] *Spencer*, 469 F.3d at 317. The plaintiff had alleged a

violation of the Americans with Disabilities Act, claiming Wal–Mart did not reasonably accommodate her disability and subjected her to a hostile work environment. *Id.* at 313. At trial, the plaintiff prevailed on her hostile work environment claim and the jury awarded $15,000 in back pay. *Id.* The district court granted the defendant's motion to set aside the back pay award because back pay was an equitable remedy, which a jury could not award, and back pay was not available absent actual or constructive discharge. *Id.* at 314. The Third Circuit affirmed, holding a "successful hostile work environment claim alone, without a successful constructive discharge claim, is insufficient to support a back pay award." *Id.* at 317; *accord Mallinson–Montague v. Pocrnick*, 224 F.3d 1224, 1237 (10th Cir.2000) ("the equitable remedy of back pay is only available . . . when the plaintiff has demonstrated that she was constructively discharged"); *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001) (the victim of discrimination must show constructive discharge to be awarded back pay). The Third Circuit reasoned "if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay is not an issue." *Spencer*, 469 F.3d at 317; *see also Hertzberg*, 261 F.3d at 660 (absent constructive discharge "a plaintiff subjected to sexual harassment, no matter how egregious, is not 'made whole' by the equitable remedy

*Nurses*, 360 F.2d 577, 581 n. 8 (4th Cir.1966) (same).

2. At oral argument, defendant argued the damages sought by plaintiff, i.e. pay she would have received from advanced placements, are compensatory damages, not back pay. However, the damages plaintiff seeks constitute back pay because she requests the difference between the salary she received and the salary she claims she would have received had defendant continued to utilize her in advanced placements. *See Durham Life Ins.*, 166 F.3d at 156.

3. Constructive discharge "occurs when an 'employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Spencer*, 469 F.3d at 316 n. 4 (alteration in original) (quoting *Goss v. Exxon Office Sys. Co.*, 747 F.2d 885, 887 (3d Cir.1984)). "To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile work environment." *Spencer*, 469 F.3d at 316 n. 4 (quoting *Landgraf v. USI Film Prods.*, 968 F.2d 427, 430 (5th Cir.1992)).

of back pay" (quoting *Caviness v. Nucor–Yamato Steel Co.*, 105 F.3d 1216, 1219 (8th Cir.1997))).

In *Spencer*, however, the court did not specify whether its holding applied to both pre- and post-termination back pay or only to post-termination back pay. *Spencer*, 469 F.3d at 317. Plaintiff contends *Spencer* applies only if a plaintiff seeks post-termination back pay, but not if a plaintiff seeks pre-termination back pay. Plaintiff's Brief in Support of Back Pay and Other Damages at 8, *Hare v. Potter*, No. 02–CV–7373, 2007 WL 4760415 (E.D.Pa. Oct. 4, 2007) [hereinafter Plaintiff's Brief]. She reasons that pre-termination back pay is the wages and benefits a plaintiff would have earned from the time of discrimination to the time of resignation, whereas post-termination back pay is the wages and benefits a plaintiff would have earned from the time of resignation to the date of judgment. *See Derr v. Gulf Oil Corp.*, 796 F.2d 340, 343 (10th Cir.1986) (permitting the plaintiff to recover damages prior to, but not after, resignation); *Boehms v. Crowell*, 139 F.3d 452, 461 (5th Cir.1998) (the plaintiff could not recover back pay "beyond the date of his retirement").

■ It is unclear from the Third Circuit and trial court decisions in *Spencer* whether the damages sought by the plaintiff were pre- or post-termination back pay. *See Spencer*, 469 F.3d at 317 (discussing Spencer's back pay request and award without specifying the time period); *Spencer v. Wal–Mart Stores, Inc.*, 2005 WL 697988, at *2 (D.Del. Mar.11, 2005) (Wal–Mart argued Spencer was not entitled to back pay after what Wal–Mart "characterized as a voluntary termination"); *but cf.* Petition for Writ of Certiorari, *Spencer v. Wal–Mart Stores, Inc.*, 2007 WL 1379721, at *19–20 (May 8, 2007)

(it is "uncontested ... Ms. Spencer was still an employee of Wal–Mart, although she was still on unpaid medical leave"). Here, plaintiff seeks pre-termination back pay—or more precisely "pre-resignation" back pay—alleging she suffered economic damages as a result of a retaliatory hostile work environment before her voluntary resignation in 2004. These alleged damages consist of a salary differential she would have earned if she had received higher paying temporary assignments.

■ The court's failure in *Spencer* to distinguish between pre- and post-resignation back pay is irrelevant. As in *Spencer*, the plaintiff alleges a hostile work environment, not another type of discriminatory conduct that might allow an award of back pay for the period she endured discrimination. The cases distinguishing between pre- and post-termination damages do so in the context of a discriminatory failure to promote or provide equal pay, and not a hostile work environment. *See, e.g., Jurgens v. E.E.O.C.*, 903 F.2d 386, 389 (5th Cir.1990) (denial of promotion); *Bourque v. Powell Elec. Manuf. Co.*, 617 F.2d 61, 66 (5th Cir.1980) (unequal pay). Unlike plaintiffs in hostile work environment cases, in discriminatory promotion or equal pay cases, plaintiffs who leave their employment absent a constructive discharge could be entitled to "a remedy covering the period during which the discrimination occurred up to the date of resignation." [4] *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 755 (3d Cir.1997) (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 758 F.Supp. 303, 307 (E.D.Pa.1991)) (discussing the constructive discharge rule applied by other circuits); *accord Jurgens*, 903 F.2d at 389 n. 4 (5th Cir.1990) (to recover back pay beyond the date of his retirement or resig-

4. The requirement of actual or constructive discharge to recover post-resignation back pay applies equally in both contexts. *See, e.g.,* *Spencer*, 469 F.3d at 317; *Derr*, 796 F.2d at 343.

nation, i.e. post-termination back pay, an employee must be constructively discharged); *Derr*, 796 F.2d at 343 (unless plaintiff "was constructively discharged, she is entitled to only the difference in pay between what she earned as an accounting clerk and what she would have earned as an associate lease analyst until she resigned").

■ Sound policy reasons support the availability of pre-termination back pay in failure to promote and equal pay cases. Plaintiffs who challenge promotions or equal pay decisions must do so consistent with the policy of halting discrimination "within the context of existing employment relationships." *Bourque*, 617 F.2d at 66; *Ezold*, 758 F.Supp. at 307. Plaintiffs in that posture are encouraged to "work with superiors within the existing job setting and employment relationship in an effort to overcome resistance within that workplace and to eradicate discrimination." *Thorne v. City of El Segundo*, 802 F.2d 1131, 1134 (9th Cir.1986); *Ezold*, 758 F.Supp. at 307. Moreover, where "an employer discriminatorily denies promotion to an employee that employee's duty to mitigate damages encompasses remaining on the job." *Jurgens*, 903 F.2d at 389; *see Bourque*, 617 F.2d at 66. Because a plaintiff who is unlawfully denied a promotion or denied equal pay for equal work should attempt to eradicate discrimination from within the workplace and has a duty to mitigate damages, it would be unfair to deny wages and benefits lost prior to resignation, i.e. pre-termination back pay. *See Jurgens*, 903 F.2d at 389 n. 4; *Thorne*, 802 F.2d at 1134.

■ Unlike a plaintiff in a denial of promotion or equal pay case, a plaintiff who alleges a hostile work environment, but who is not constructively discharged, cannot prove the discrimination had a "concrete effect on the plaintiff's employment status." *Caviness*, 105 F.3d at 1219 (quoting *Landgraf*, 511 U.S. at 254, 114 S.Ct. 1483). In a denial of promotion or equal pay case, a plaintiff must prove the employer denied the plaintiff a promotion or equal pay for equal work, and the plaintiff's protected status was a motivating factor in the denial. 42 U.S.C. §§ 2000e–2(a)(1), 2000e–2(h), 2000e–2(m); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 94, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003); Third Circuit Model Jury Instructions § 5.1.1 (2007). In a hostile work environment case, a plaintiff must prove the employer subjected the plaintiff to adverse treatment, the adverse treatment was due to a discriminatory reason, and the conduct was subjectively and objectively severe or pervasive. Third Circuit Model Jury Instructions § 5.1.5; *Weston v. Pennsylvania*, 251 F.3d 420, 425–26 (3d Cir.2001) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Therefore, in a denial of promotion or equal pay case, a plaintiff must prove a connection between the discriminatory conduct and the "concrete effect on [the] plaintiff's employment status," i.e. the denial of promotion or differential in compensation. *See* 42 U.S.C. §§ 2000e–2(a)(1), 2000e–2(h), 2000e–2(m). However, in a hostile work environment case, a plaintiff must prove discrimination in the workplace, but is not required to prove, and often cannot connect the discriminatory conduct to, a "concrete effect on [the] plaintiff's employment status, such as a denied promotion, a differential in compensation, or termination" absent an actual or constructive discharge.[5] *Caviness*, 105

---

5. If the jury had expressly found defendant discriminated against plaintiff by failing to promote her as part of its finding of a retaliatory hostile work environment, this rationale could support distinguishing *Spencer* and granting back pay. *See Landgraf*, 511 U.S. at 254, 114 S.Ct. 1483.

F.3d at 1219 (quoting *Landgraf,* 511 U.S. at 254, 114 S.Ct. 1483); *accord Hertzberg,* 261 F.3d at 660. As evidenced here, such damages are often impossible to compute. *See infra* discussion § 1(B).

As a result, the Third Circuit concluded loss of pay is simply not an issue unless a hostile work environment becomes so intolerable that it forces a plaintiff to leave his or her position. *Spencer,* 469 F.3d at 317. Although *Spencer* does not seem to anticipate a situation like plaintiff's, in which she continued to work in a hostile work environment and sought back pay for a lost job opportunity, the breadth of *Spencer's* rationale precludes relief in this case. *See Spencer,* 469 F.3d at 317. I am bound by its holding. *See In re Connors,* 497 F.3d 314, 321 n. 6 (3d Cir.2007) (court bound by prior holding); *United States v. MacEwan,* 2004 WL 3019316, at *3 (E.D.Pa. Dec. 29, 2004) (court bound by Third Circuit precedent).

To the extent plaintiff casts doubt on *Spencer's* rationale, the Third Circuit resolved any ambiguity in its decision remanding plaintiff's case for trial. Although it held plaintiff had raised triable issues of fact on her hostile work environment claim, the Third Circuit affirmed a grant of summary judgment on plaintiff's constructive discharge claim. *Hare,* 220 Fed.Appx. at 135. It then reasoned that since plaintiff "was not constructively discharged, it appears that she probably will not be able to seek back or front pay." *Id.* at 135 n. 9. The court relied on the same legal authorities it cited in *Spencer,* in which it observed that "a plaintiff alleging employment discrimination must show either actual or constructive discharge in order to receive an award of backpay." *Spencer,* 469 F.3d at 317 n. 6.

B. *Back Pay Award is Speculative*

▮▮▮▮ Even assuming backpay is an available remedy in this case, plaintiff could not prevail because her damages are speculative. A "back pay remedy must be specifically tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices." *Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 900, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984) (citing *Phelps Dodge Corp. v. N.L.R.B.,* 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271 (1941)); *accord Bigelow v. RKO Radio Pictures,* 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946) (a damage award cannot be "based on speculation or guesswork"). Therefore, damages cannot be awarded if it is uncertain whether the damages sought resulted from the unlawful act. *Story Parchment Co. v. Paterson Parchment Paper Co.,* 282 U.S. 555, 562, 51 S.Ct. 248, 75 L.Ed. 544 (1931) (citing *Taylor v. Bradley,* 39 N.Y. 129 (1868)). Damages are recoverable if they are "definitely attributable to the wrong" and uncertain only in respect to the amount. *Story Parchment Co.,* 282 U.S. at 562, 51 S.Ct. 248. In *Bigelow* and *Story Parchment Co.,* the Court awarded damages even though the amount was uncertain and allowed the jury to make a "just and reasonable estimate." *Bigelow,* 327 U.S. at 264–66, 66 S.Ct. 574; *Story Parchment Co.,* 282 U.S. at 563, 567, 51 S.Ct. 248. The rationale for the award, however, rested on proof that the defendant's wrongful conduct caused the damages sought and prevented plaintiff from presenting a more precise damage computation. *Bigelow,* 327 U.S. at 266, 66 S.Ct. 574; *Story Parchment Co.,* 282 U.S. at 566–67, 51 S.Ct. 248. Causation was uncontested and the only issue was computing the damage award. *Id.*

Here, however, plaintiff did not prove any loss in wages or benefits resulted from the defendant's unlawful actions. Her claim rests exclusively on whether she would have received higher pay and more benefits through "advanced placement" as-

signments, i.e., being selected for temporary promotional assignments periodically given to postal managers on an ad hoc basis. Plaintiff presented evidence that before the unlawful retaliation occurred she had received advanced placements with increased pay 58% of the time, but was never placed in an advanced placement in the period between her promotion in April 2001[6] and her departure from the defendant's employ in December 2004. Plaintiff's Brief at 10–12. This differential, she claims, allows me to extrapolate an estimate of how much additional pay she would have earned between 2002 and 2004. Assuming I had legal authority to award back pay in this case, such an estimate is not justified because there is no evidence during the relevant period that: (1) defendant had any advance placement opportunities; (2) plaintiff was eligible and physically available to undertake such assignments; (3) plaintiff actually was considered and rejected for advanced placement opportunities; and (4) as in *Bigelow*, defendant's "wrongful action" prevented plaintiff "from making anymore precise proof of the amount of damages." *See Bigelow*, 327 U.S. at 266, 66 S.Ct. 574. Rather, the undisputed evidence is that plaintiff was promoted and had undertaken expanded responsibilities after she made her sexual harassment complaint.[7] *See* Pretrial Stipulation at 2 (plaintiff filed EEOC complaint in July, 2000 and was selected as postmaster for the Nazareth office after September, 2000).

The record is devoid of evidence establishing plaintiff would have received advanced placement assignments during the 2002 through 2004 period. Although plain-

tiff presented evidence that Rich Wasser, a fellow postmaster, received advanced placements within five or six months of being promoted in 2001, *see* Plaintiff's Brief at 11, the defendant established that Wasser's advanced placements dealt mostly with a discrete field of specialization. Each post office is unique and has its own management challenges, and plaintiff was promoted to a post office that needed immediate managerial attention. In addition, advanced placement opportunities are inherently sporadic and indeterminate, rendering it impossible to determine whether defendant's unlawful actions caused plaintiff's lack of opportunities in 2002 through 2004. Contrary to plaintiff's claim, damages cannot be predicated solely on evidence of plaintiff's past history and the career path of one colleague.

I cannot determine whether lost wages resulted from the unlawful act and any award would rely on "speculation or guesswork." *Bigelow*, 327 U.S. at 264, 66 S.Ct. 574. For example, plaintiff offers no meaningful distinction to explain why I should set damages at $1, $10, $100, $1,000, $10,000, or some other amount. Based on the evidence, even if I assume defendant caused damages and such damages were recoverable under *Spencer*, I could not affix a rational value to the harm. The limitation in *Spencer* that back pay damages in a hostile work environment case must be accompanied by constructive discharge illustrates this point. Setting pre-termination damages in an unlawful promotion or unequal pay case is easily computed by comparing the higher pay that was lost, with the lower pay actu-

---

**6.** Plaintiff was promoted during the period for which she seeks damages. To account for time needed to serve full-time in her new position as Nazareth's postmaster, plaintiff concedes she would not be entitled to damages for the eight months between April 2001 and December 2001. Plaintiff's Brief at 12.

**7.** The evidence did establish, however, that defendant's retaliatory conduct also occurred after plaintiff refused to drop her underlying claim.

ally earned. *See, e.g., Derr,* 796 F.2d at 343. Similar damages in a hostile work environment case, however, can be determined only when a plaintiff deems conditions so intolerable that he or she must leave the job. *See, e.g., Spencer,* 469 F.3d at 317. Otherwise, a fact finder must speculate what financial benefits, if any, a plaintiff might have received "but for" the hostile work environment.

Although it is "suspicious" that plaintiff's career path was drastically altered after she complained of sexual harassment, *Hare,* 220 Fed.Appx. at 132, insufficient evidence exists to support defendant's unlawful conduct caused back pay damages or to quantify those damages in any meaningful fashion.

## II. *Non–Economic Equitable Relief*

Plaintiff alleges defendant continued to discriminate against her after trial by "falsely publicizing to numerous Postal [Service] employees that plaintiff lost her case against the Postal Service, when in fact, she won the main claim, and damages were still undetermined." Plaintiff's Brief at 14. Plaintiff seeks broad equitable relief ordering the Postal Service to stop "all communications denying the verdict and harming the reputation of Ms. Hare;" ordering defendant to stop "all communications defaming Ms. Hare in the Postal Service;" ordering defendant to publish notices of the result of the litigation; and ordering defendant to "remedy the effects of past discrimination against [p]laintiff and other employees" and to stop any

"retaliatory treatment of employees who have engaged in protected activity." Plaintiff's Brief at 14–15.

### A. *Restraints on Speech*

▌ Plaintiff's request for equitable relief ordering defendant to cease and desist communication about the verdict and to cease and desist communications defaming the plaintiff are denied because no continuing violation of Title VII exists and the requests constitute impermissible restraints on speech.

▌ Prohibiting further retaliatory conduct is appropriate only if the employer continues to discriminate under Title VII. *See Charlton v. Paramus Bd. Of Educ.,* 25 F.3d 194, 200 (3d Cir.) (former employee may file a retaliation action against former employer). To warrant relief, however, the post-employment actions must damage a former employee's prospects for future employment. *Durham Life Ins.,* 166 F.3d at 157. Examples of such actions include "efforts by an employer to scuttle a former employee's search for a new job, such as withholding a letter of recommendation or providing negative information to a prospective employer." *Passer v. Am. Chem. Soc.,* 935 F.2d 322, 331 (D.C.Cir.1991). Here, because defendant's alleged actions do not affect plaintiff's ability to seek new employment, plaintiff has failed to prove how defendant's actions constitute continued discrimination under Title VII.[8]

Moreover, I have no authority to restrict unnamed employees from interpreting a

---

**8.** Plaintiff bases her claim of continued discrimination on the sworn affidavits attached to Plaintiff's Brief from herself and from Frank Treboschi, an employee of defendant and a witness in the case. Defendant filed a motion to strike the affidavits alleging the affidavits are hearsay and irrelevant.

Even if the statements were admissible under a hearsay exception, which is doubtful, they are not relevant. Relevant evidence is

"evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The affidavits do not tend "to make any fact of consequence more or less likely." *Id.* They do not support the claim for back pay, address whether the restraints on speech are appropriate, or support the claim for other equitable relief.

split verdict in a way that is less than favorable to plaintiff. *See Bantam Books, Inc. v. Sullivan,* 372 U.S. 58, 70, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963) (presumption against prior restraints for expression). Plaintiff has cited no law to support such an extraordinary restraint.

### B. *Training Program and Publication of the Verdict*

■ Since "one of Title VII's central purposes is to make persons whole on account of unlawful employment discrimination," I have "broad equitable discretion under Title VII to fashion the most complete relief possible." *Hohider v. United Parcel Service, Inc.,* 243 F.R.D. 147, 195 (W.D.Pa.2007) (citing *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 763–64, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)); *see also Heller v. Elizabeth Forward Sch. Dist.,* 182 Fed.Appx. 91, 96 (3d Cir.2006) ("the District Court has discretion to fashion equitable relief to effectuate the purposes of the Title VII statutory scheme"); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 401 (3d Cir.1976) (court has broad discretion to fashion corrective measures for discriminatory conduct).

■ Equitable relief is appropriate because the jury found defendant retaliated against one of its postmasters by creating a retaliatory hostile work environment. *Heller,* 182 Fed.Appx. at 96. To accomplish complete relief, defendant shall publish notices of the verdict in the contested region and shall implement a sexual harassment/retaliation training program in the contested region. *Cf. Sims v. Montgomery County Comm'n,* 766 F.Supp. 1052, 1102 (M.D.Ala.1990) (training appropriate to "rid the [offices] of its current ... hostile atmosphere").

The training program should supplement defendant's existing program and should focus on managerial-level employees in the contested region. Defendant contended at oral argument such training would be duplicative of existing efforts and unnecessary because the relevant postal regions and some of its supervising personnel have changed. The jury's verdict, however, identified a serious deficiency at some levels of defendant's management. Such a finding cannot be ignored. The training proposed would impose nominal burdens on defendant's operations while reinforcing the need for defendant's managers to remain vigilant in promoting the lofty goals of Title VII.

The parties should meet and confer on a recommended program and present a joint proposal by December 15, 2007. The parties should also confer and determine the relevant geographical region for the training program and for posting the verdict notices.

An appropriate order follows.