

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-2-2004

# Potence v. Hazleton Area Sch

Precedential or Non-Precedential: Precedential

Docket No. 03-1535

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Potence v. Hazleton Area Sch" (2004). *2004 Decisions.* Paper 969.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/969

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed February 2, 2004

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 03-1535, 03-2647

———————

MICHAEL D. POTENCE

v.

HAZLETON AREA SCHOOL DISTRICT;
GERALDINE S. SHEPPERSON

Hazleton Area School District,
*Appellant*

———————

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 99-cv-02155)
District Judge: Hon. James M. Munley

———————

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2004

Before: SLOVITER, RENDELL and ALDISERT,
*Circuit Judges*

(Filed: February 2, 2004)

———————

Robert E. Durrant
Stephen M. Pincus
Campbell, Durrant & Beatty, P.C.
Pittsburgh, PA 15219

Attorneys for Appellant

Theodore R. Laputka, Jr.
Andrew J. Lentowski
Theodore R. Laputka & Associates
Hazleton, PA 18201

Attorneys for Appellee

## OPINION OF THE COURT

SLOVITER, *Circuit Judge.*

The Hazleton Area School District (the "School District") appeals from the Amended Judgment and Order in favor of appellee Michael D. Potence pursuant to a jury verdict that the School District had violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634. It also appeals from the award of attorneys' fees.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. Because we believe the District Court did not abuse its discretion in denying the School District's motion for judgment as a matter of law, and in denying its alternative motion for a new trial, and did not abuse its discretion in calculating the attorneys' fees, we will affirm.

### I.

The School District posted an advertisement seeking to fill the vacant position of plumbing/HVAC (heating, ventilation, and air conditioning) instructor. As posted, the advertisement put forth the following job criteria: "Must possess or be eligible for PA plumbing and HVAC certification. Must be able to document minimum two years related trade/technical experience in both occupations." App. at 237. Dr. Edward Lyba, administrative director of the Hazleton Area Career Center, was appointed by Superintendent Dr. Geraldine Shepperson to direct the hiring process.

Initially five applications were submitted, and only one candidate, Jeffrey Sweda, was selected for an interview. After receiving some pressure from the School Board, a second candidate, John Darrow, was interviewed, and

despite the hiring committee's recommendation that Sweda be hired for the position, the School Board again directed Dr. Lyba to interview yet another candidate, Michael Potence.

The entire original interview committee could not be reconvened for purposes of the interview with Potence, and Dr. Lyba added a practical examination on which applicants had to name parts of a refrigeration unit. Sweda ranked first, Potence second. Dr. Lyba recommended to Superintendent Shepperson that Sweda be hired, and Sweda was hired after the School Board approved his hiring. Potence filed suit claiming that he was discriminated against on the basis of his age.

The School District contends that Potence was not qualified for the job because he lacked a refrigerant recapturing certification. Potence responds that this reason was pretext because, among other things, this certification has nothing to do with either HVAC or plumbing instruction, and it was not listed in the advertisement for the position. A member of the second interview committee, Mr. Kevin Dodson, could not explain why a refrigeration exam was used to test plumbing, heating, ventilation, and air conditioning. There was trial evidence that the reasons provided to Potence for not interviewing or hiring him changed over time. He was initially told by Superintendent Shepperson that he had failed to forward his educational transcripts, but a postal receipt introduced in evidence showed that his transcripts had been received in the required time period; then Dr. Shepperson told him that he was "crying sour grapes" because the School Board had hired a fine young instructor; and finally he was told that he was not hired because he was not certified in refrigerants. App. at 7.

Potence also adduced evidence at trial from which the jury could have concluded that Dr. Shepperson had a discriminatory animus against older candidates and that she had control over the hiring process. She directed Dr. Lyba to hire "no more old plumbers," and she told someone else that "we are not going to hire any more old plumbers because the old plumbers cannot pass the certification test." Appellee's Br. at 5-6. She also made a comment to

the effect that the school had hired a "fine young man." App. at 7.[1]

It was against this factual background that the jury found for Potence and awarded him $254,000 in damages, which the District Court reduced by $81,750 to reflect income that Potence made in other employment. The court then doubled the award as liquidated damages, pursuant to the authority given in the ADEA for a court to do so for "willful" violations, 29 U.S.C. § 626(b), resulting in a judgment of $344,500. The District Court denied the School District's motion for judgment as a matter of law.

## II.

In pertinent part, the ADEA provides, "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age . . . ." 29 U.S.C. § 623(a). The burden-shifting sequence in examining alleged employment discrimination was set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). The plaintiff must produce sufficient evidence to convince a reasonable factfinder as to all the elements of a prima facie case of discrimination. If a plaintiff does establish a prima facie case, then the burden of production shifts to the defendant to show that there was a nondiscriminatory reason for the adverse employment decision. If the defendant does so, the plaintiff must submit evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated reasons, or (2) believe that invidious discrimination was more likely than not the motivating or determinative cause of the employer's action. *Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000).

In order to establish a prima facie case of discrimination, the plaintiff must demonstrate that (1) s/he is over forty, (2)

---

1. The portion of the trial testimony quoted in this paragraph was not filed of record, and is therefore taken from the Appellee's brief and the District Court's opinion.

is qualified for the position in question, (3) suffered from an adverse employment decision, and (4) that his or her replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001). The School District challenges only the second of the criteria, and has asserted throughout that Potence lacked the necessary qualifications.

**A. Whether the evidence showed that Potence was qualified for the position, and whether the lack of a refrigerant certification was a pretext for discrimination.**

In reviewing whether the School District was entitled to judgment as a matter of law, we must review the record in the light most favorable to the prevailing party "unless the record is critically deficient of that minimum quantum of evidence from which a jury might reasonably afford relief." *Rotondo v. Keene Corp.*, 956 F.2d 436, 438 (3d Cir. 1992) (quotations and citations omitted). The School District's only argument that Potence was not qualified for the position was that he lacked a federal certification to handle refrigerants. Dr. Lyba testified that the School District had purchased diagnostic equipment relating to HVAC troubleshooting, and that this equipment required the operator to introduce refrigerant into, and remove refrigerant from, the machine. Because this equipment was purchased before the instructor position was advertised, the School District argues the certification in question was a prerequisite, rather than a pretext, for age discrimination.

It is undisputed that Potence did not possess this certification, but there was sufficient evidence from which the jury could have found that the School District's reliance on this qualification was a pretext for discrimination. It is not contested that the advertisement for the position failed to list this as a qualification. The School District asserts that it would not be reasonable to expect the advertisement to "put potential applicants on notice of every essential job qualification." Appellant's Br. at 21. In light of the fact that the advertisement already listed plumbing and HVAC certification as two of its criteria, the jury could reasonably have concluded that "refrigerant" also would have been

included if it were an essential qualification. Another fact that the jury could have considered in concluding the School District's reason was pretext was that Potence was given various reasons at different stages of the hiring process as to why he was not hired or given an initial interview. There was also testimony of several ageist remarks arguably attributable to Dr. Shepperson.

The School District nonetheless objects that Dr. Shepperson was not in control of the hiring process. We have held that stray remarks by non-decisionmakers alone are insufficient to establish discriminatory intent, *Walden v. Georgia-Pacific Corp.*, 126 F.3d 506, 513-14 (3d Cir. 1997), but this argument fails in the instant case for two reasons. First, it is not only these remarks that give rise to an inference of discriminatory intent. The different stories told to Potence over the course of the process, the failure to even mention refrigerant certification in the notice of the position, the unplanned decision to create a refrigerant exam at the end of the hiring process (after Dr. Lyba had twice recommended Sweda for the position, and twice been told to slow down) constitute sufficient evidence from which a jury might have inferred discrimination. Second, and more importantly, there is evidence on the record that Dr. Shepperson did wield some influence over the process. We have held that persons who have "the direct ability to influence hiring and firing decisions" may be held liable for discrimination. *Levendos v. Stern Entertainment, Inc.*, 909 F.2d 747, 752 (3d Cir. 1990). Dr. Shepperson was the person who told Potence why he did not receive an interview; she told the interviewing committee during Potence's interview, "I am sorry you have to go through this again because of some people;" and she testified that she was ultimately responsible for all the hiring activities of the School District. App. at 8.

The School District presented evidence that she did not participate in the process. If we were sitting as jurors, we might have found that evidence persuasive. However, we are not the jurors. The evidence viewed in the light most favorable to the verdict winner allowed a reasonable jury to infer that Potence was qualified for the position and that the refrigerant certification qualification served as a pretext

for age discrimination. Therefore, we will affirm the District Court's denial of the motion for judgment as a matter of law.

**B. Whether the District Court erred in failing to provide the requested jury interrogatory.**

We review the formulation of special interrogatories for abuse of discretion. *Merritt Logan, Inc. v. Fleming Cos.*, 901 F.2d 349, 367-68 (3d Cir. 1990). The special interrogatory given to the jury was, "Has Plaintiff, Michael Potence, proved by a preponderance of the evidence that the Defendant, Hazleton Area School District, discriminated against him on the basis of age in violation of the Age Discrimination in Employment Act?" App. at 55-56. The School District requested that the Court include the following special interrogatory, "Do you find that Mr. Sweda would have been hired even if Mr. Potence's age had not been considered?", but the trial court denied that interrogatory. App. at 206.

The School District contends that the District Court's refusal to include this question provided the jury with only half the applicable legal standard. We reject that contention. It is not realistic to view the issue posed by this case as consisting of two halves. There was one issue: whether Potence was discriminated against in violation of the ADEA.

The School District cites an opinion in which the court stated that "[i]n a complicated case such as this, the special interrogatory device localizes and focalizes the specific problems and issues whereas a general verdict often permits improper jury meandering." *Jamison Co. v. Westvaco Corp.*, 526 F.2d 922, 935 (5th Cir. 1976). However, at issue in that case was a contract and damages computation by the jury that had "many possible alternatives, asymetrical [sic] incongruencies, potential solecisms, and error compounded upon error." *Id.* In contrast, the instant case is a straightforward discrimination claim with no such labyrinth for a juror to navigate.

The District Court addressed the issue raised by the School District in the following jury charge: "If the Plaintiff

has offered evidence from which you could conclude that the Defendant School District discriminated against him because of his age, then the Plaintiff is entitled to recover unless the School District proves by a preponderance of the evidence that it would have taken the same action regardless of the Plaintiff's age." App. at 11. Inasmuch as the Court gave this charge, it did not abuse its discretion in declining to give the requested special verdict interrogatory.

## C. Whether liquidated damages may be assessed against the School District under the ADEA.

Based on the jury's finding that the School District acted willfully when it violated the ADEA, the District Court invoked the liquidated damages provision of the ADEA and doubled Potence's award of damages. The School District contends that it cannot be compelled to pay liquidated damages due to its status as a municipality because liquidated damages are punitive in nature. We have not previously considered this issue in the context of the statutory framework of the ADEA. As we must interpret the relevant provisions of the ADEA, the issue is a legal one over which we exercise plenary review. *Smith v. Holtz*, 210 F.3d 186, 200 (3d Cir. 2000).

The ADEA incorporates the enforcement powers, remedies, and procedures of the Fair Labor Standards Act ("FLSA") set forth in 29 U.S.C. §§ 211(b), 216 (except for subsection (a)), and 217. 29 U.S.C. § 626(b). The enforcement provision of the FLSA expressly provides for imposition of liquidated damages payable "in cases of willful violations of this chapter." 29 U.S.C. § 626(b). The FLSA further provides that "[a]ny employer who violates [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Thus, when a jury finds that an employer willfully violated the ADEA, the basic damages award may be doubled under this liquidated damages provision.

The School District argues that liquidated damages may not be assessed against municipalities because they are

punitive. There is an historical tension between municipal liability and damages imposed as punishment. *Cook County v. United States ex rel. Chandler*, 123 S. Ct. 1239, 1246 (2003). "Since municipalities' common law resistance to punitive damages still obtains, '[t]he general rule today is that no punitive damages are allowed unless expressly authorized by statute.'" *Id.* (quoting *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260 n.21 (1981)). In assessing whether liquidated damages under the ADEA may be imposed against the municipality, represented here by the School District, we must address whether liquidated damages under the ADEA are punitive and, if so, whether the imposition of punitive damages against a municipality is expressly authorized by statute.

Both the Supreme Court and this court have held that the liquidated damages provision of the ADEA was intended to be punitive in nature. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 105, 126 (1985); *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1095 (3d Cir. 1995). We must therefore examine the language of the statute to make certain that it applies to municipalities.

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge" an individual because of his or her age. 29 U.S.C. § 623(a)(1). Included in the ADEA's definition of employer is "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State." 29 U.S.C. § 630(b). The ADEA could not be more explicit in imposing liability for age discrimination against municipalities. Similarly explicit is the ADEA's contemplation of the imposition of liquidated damages, as it states in pertinent part "[t]hat liquidated damages shall be payable only in cases of willful violations of this chapter." 29 U.S.C. § 626(b). The FLSA provisions incorporated in the ADEA provide for the imposition of liquidated damages "against any employer (including a public agency)," 29 U.S.C. § 216(b), and the statutory definition of a "public agency" includes "State[s] or political subdivision[s] thereof," 29 U.S.C. § 203(x).

Furthermore, in dictum we assumed without deciding that liquidated damages under the FLSA were available against a municipality. *See Brooks v. Vill. of Ridgefield*

*Park*, 185 F.3d 130, 137 (3d Cir. 1999); *see also Ray v. Iuka Special Mun. Separate Sch. Dist.*, 51 F.3d 1246, 1253 (5th Cir. 1995) (upholding award of liquidated damages against a school district under the ADEA when the issue on appeal was whether the school district had willfully violated the ADEA); *Lee v. Rapid City Area Sch. Dist. No. 51-4*, 981 F.2d 316, 319-20 (8th Cir. 1992) (*en banc*) (remanding for assessment of full liquidated damages against the school district under the ADEA when the issue on appeal was whether the district court erred in discretionarily reducing such damages); *Orzel v. City of Wauwatosa Fire Dep't*, 697 F.2d 743, 759 (7th Cir. 1983) (upholding liquidated damages award against municipal fire department under the ADEA when issue on appeal focused on willfulness).

In *Cook County*, the Supreme Court held that under the False Claims Act ("FCA") treble damages could be imposed against municipalities because ever since the statute's creation in 1863 its definition of "person" was intended to cover local governments, and Congress did not manifest an intent to limit the scope of that definition when it raised the ceiling on the damages in 1986. 123 S. Ct. at 1243-47. In contrast to the FCA, which does not explicitly identify a municipality as a "person," the ADEA, in the provisions quoted above, does explicitly include state and local governments in the definition of "employer." Thus, we need not move beyond the plain language of the statute or go to lengths to consider the historical context of the statute as the Court did in *Cook County*. Rather, the language of the ADEA itself makes it clear that Congress intended to subject municipalities like the School District to the liquidated damages provision of the ADEA.

Inasmuch as the statute expressly authorizes the imposition of liquidated damages against a municipality, even though such damages are punitive in nature, we conclude that the District Court did not err in assessing liquidated damages against the School District.

## D. Whether the District Court erred in not reducing the damages award by the amount of retirement benefits that would have accrued to Potence.

The jury returned a verdict form that awarded $254,000 in damages, and beneath that monetary figure wrote "back

pay 3 2/3 years." App. at 35. The School District asserts that the award, which was intended to be for back pay, erroneously included $97,000 in retirement benefits that legally constitutes front pay. The District Court rejected the School District's argument that the amount of damages awarded was not supported by the record. The Court stated it would not "second guess the jury and reduce the award because of a remark written in the margin of the verdict which may have no relevance with respect to the actual award." App. at 15.

The verdict form did not require the jury to differentiate between front pay and back pay, and therefore the written note could have had no significance. Potence agrees with the School District that the award was likely based on Potence's salary schedule computation, which set forth the back pay calculation for 3-2/3 years as including $121,000 in wages, $36,000 in medical coverage, and $97,000 in retirement benefits, App. at 82-94, 209-11, totaling $254,000, the precise amount of damages awarded by the jury. However, the School District provides no case law supporting its contention that retirement benefits are always considered front pay. Potence presented evidence at trial that $97,000 is the amount of the retirement benefits that would have accrued to him during the relevant 3-2/3 years. Potence argues that the jury could have reasonably assumed that he would have worked with the School District until the time when such benefits would vest, making these benefits part of earned back compensation.

Because a district court has an obligation "to uphold the jury's award if there exists a reasonable basis to do so," and may not "vacate or reduce the award merely because it would have granted a lesser amount of damages," *Evans v. Port Auth. of N.Y. & N.J.*, 273 F.3d 346, 351-52 (3d Cir. 2001) (internal quotation marks and citations omitted), we will uphold the damages award.

**E. Whether the District Court abused its discretion in calculating the reasonable rates for attorneys' fees.**

We review the reasonableness of an award of attorneys' fees for an abuse of discretion. *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d Cir. 1997). The party seeking

attorneys' fees has the burden to prove that its request is reasonable. *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). To meet its burden, the fee petitioner must submit evidence to support the hours and billing rates it claims. *Id.* The School District argues that the following rates awarded were unreasonable and unsupported by the record: $200 per hour for Laputka, $150 per hour for Lentowski, $150 per hour for Sernark-Martinelli, and $85 per hour for paralegals.

A reasonable hourly rate is calculated according to the prevailing market rates in the community. *Washington v. Phila. County Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996). An attorney's usual billing rate is a good starting point for assessing reasonableness, though it is not dispositive. *Maldonado v. Houstoun*, 256 F.3d 181, 184-85 (3d Cir. 2001).

Laputka and four other attorneys in the area performing the same services submitted affidavits. Their rates ranged from $150 to $250 per hour. It was not an abuse of discretion to apply rates within this range for the three attorneys who worked on this case, regardless of whether they were hired as contract lawyers or were relatively recent law school graduates. This is particularly true when the more junior associates, Lentowski and Sernark-Martinelli, were awarded the lowest rate within the range.

With regard to the paralegal rate of $85 per hour, the School District argues that pursuant to recent decisions on fee petitions that assessed paralegal rates at $50 per hour, the District Court should have reduced the rate awarded in the instant case. *See, e.g.*, *James v. Norton*, 176 F. Supp. 2d 385, 400 (E.D. Pa. 2001). However, in those cases the rates were reduced because it was deemed unnecessary to bill paralegals at senior paralegal rates when evidence showed they engaged in low-level clerical work, such as typing. *Id.* at 399-400. Laputka's affidavit indicated that the paralegals involved in the instant case participated in a broader and more complex range of trial-preparation activities. The Court was free to accept Laputka's affidavit in light of the School District's failure to provide evidence in support of its objection. We will therefore uphold the reasonableness of the paralegal rate.

## III.

In conclusion, the record viewed in the light most favorable to Potence supports the jury verdict, and the District Court did not err as a matter of law in granting liquidated damages or abuse its discretion in calculating attorneys fees or refusing the requested special interrogatory. We will therefore affirm.

A True Copy:
        Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*