NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-2722 & 10-2723
_____

ANITA DEVILLE,
*Beattie Padovano, LLC

Appellants

v.

GIVAUDAN FRAGRANCES CORP; ABC CORP 1-10

*(Pursuant to Fed. R. App. P. 12(a))
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-08-cv-02034)
District Judge: Hon. Garrett E. Brown, Jr.
_____

Submitted under Third Circuit LAR 34.1(a)
February 15, 2011

Before: SLOVITER, HARDIMAN and ALDISERT, Circuit Judges.

(Filed: March 25, 2011)

_____

OPINION OF THE COURT
_____

ALDISERT, Circuit Judge.

　　Anita Deville appeals from the order of the United States District Court for the

District of New Jersey, which granted her employer's motion for summary judgment in

1

her action alleging violations of the Age Discrimination in Employment Act ("ADEA"), and the New Jersey Law Against Age Discrimination ("NJLAD"). In a related and consolidated appeal, Deville's attorney, Vanessa R. Elliott, appeals from the District Court's order sanctioning her for misconduct during the discovery phase of this suit. We will affirm both orders.

## I.

The parties are familiar with the events that gave rise to this appeal. We therefore set forth the following facts—which we draw from Deville's complaint, from the docket sheet, from the statement of undisputed facts she submitted to the District Court, and from those portions of Givaudan's statement of undisputed facts that Deville admitted to be true—only as required to explain our reasoning.

Anita Deville was 57 years old when she filed this age discrimination suit. For approximately 20 years she was an employee of Givaudan Fragrances Corporation, a company that produces fragrances for colognes and other consumer products. In 2000, Deville became an account executive for a Givaudan client who, for confidentiality reasons, we shall refer to as "Client A." Although she received some favorable reviews for her work with Client A, a 2001 employee development plan identified presentation skills as one of Deville's areas of weakness. In 2006, she made a presentation she later called "horrendous" to the entire Givaudan sales team. That same year, Deville's supervisor was considering whether to promote her from Client A's "account executive" to its "senior account executive." Givaudan's United States Consumer Products President sent her supervisor an email that read in pertinent part:

> While I agree [Deville] has done a reasonable job, my concern remains that she is not the ideal long term fit for the account. . . . or the company. It is my belief that we should have the best people in our best business. I am OK with your decision and proposal, but just keep in mind that if we promote her and then decide that we need a better quality of person, it would be almost impossible to let her go. By promoting her we are reinforcing that

2

she is doing a great job which, when combined with her age and her gender, will make it very difficult to make a change.

(App. 5-6.)

In March of 2007, Givaudan bought a flavors and fragrance company called Quest International. The acquisition required eliminating some job positions, because Quest had a person who handled Client A. Faced with a choice between Deville and Quest's employee, who is 6 years younger than Deville and who was Quest's Vice President of International Accounts for Client A, Givaudan selected the Quest employee. In June of 2007, Givaudan notified Deville that her employment with the company would end.

In the fall of 2007, Givaudan began advertising an open retail sales position in New York City. The job opening was listed as "master's degree preferred," and "required" a bachelor's degree. Although she did not hold either degree, Deville applied. During her November 2007 interview, Deville told her interviewer that she had filed an EEOC charge alleging that Givaudan's decision to end her employment was motivated by age discrimination. (In fact, she had not yet filed an EEOC charge, although she had completed certain intake paperwork with the EEOC.) Deville did not get the job— Givaudan selected "M.G.," who was a current Givaudan employee with a master's degree in marketing and management of cosmetics and fragrance, from the New York Fashion Institute of Technology.

One month later, on December 18, 2007, Deville filed a formal EEOC charge against Givaudan. On April 24, 2008, before the EEOC made findings or issued a right-to-sue letter, Deville filed this lawsuit. She alleged age discrimination and retaliation in violation of the ADEA and the NJLAD. After Givaudan's answer, the District Court set a discovery schedule.

Two discovery events are relevant to this appeal. The first occurred during the deposition of an expert witness named Michael Soudry. Elliott produced Soudry to testify about alleged statistical evidence of age discrimination at Givaudan. While deposing this

3

witness, Givaudan's attorney, Wendy Lario, discovered that Soudry had relied upon lists and data that Elliott had not produced or shared with the defense. When Lario asked Soudry why he had not included this information in his report, Elliott made repeated interjections that not only prevented Soudry from answering, but provided answers on his behalf:

> Lario: . . . I do know that the list that we've just marked as Soudry 12 was produced to you in response to a request, actually in response to an interrogatory that asked for identification of those who were retirees and who were not terminated. It is a list that Mr. Soudry has acknowledged that he reviewed, so for purposes of my deposition, I'd like to continue without your interruption.

> Elliott: Well, he excluded this list from his report because it had nothing to do with . . . involuntary termination.

> Lario: In connection with your terminated list, you also indicated that you excluded New York employees, correct?

> Elliott: It's possible that this list—

> Lario: Ms. Elliott, please[.]

> Elliott: Let me clarify. I think this list is an incorrect list of what he relied upon.

> Lario: Please, can we please just focus on—

> Elliott: We are assuming that this list is correct, and when we are looking at the second page of the attachments to Soudry 8—

> Lario: Okay—

> Elliott: —I think that that would explain it, because the point is there were over ten employees that he included as 55 and over, and he did several analyses, so he produced this, this document from his computer, but it's some other analysis.

> . . . .

4

Elliott: I really think that that's what explains it that this list is wrong. It's the same number of people. If you take out the New York people and leave in the so-called retirees, it's the same number of people.

. . . .

Lario: Why didn't you produce your spreadsheet?

Soudry: To produce the spreadsheet?

Lario: Yes.

Soudry: I could produce it if you would like.

Lario: Why didn't you?

Soudry: I didn't think I should produce it.

Lario: Why?

Soudry: Did you ask for a spreadsheet?

Lario: I asked for all of the information upon which you've relied and reviewed, yes, I did[.]

Soudry: My—

Elliott: I think it's here. He did produce it. That's his spreadsheet.

. . . .

Lario: Mr. Soudry, are you sitting here and telling me today that there are other spreadsheets that you prepared that support your list of terminated employees that you did not produce?

Elliott: Yes, by mistake. That's the whole point of this information that he mistakenly produced to you.

Lario: I've asked your witness a question.

Elliott: I can finish. I can finish . . .

(App. 15-17.) The Magistrate Judge explained that she was "very troubled by the completely objectionable conduct of counsel in defending [Soudry's] deposition" (App. 32), because in her estimation Elliott's interjections went "beyond just suggesting an

5

answer" and amounted to "testifying for the expert witness . . . throughout the deposition testimony," (App. 30).

The second discovery event relevant to this appeal followed the Magistrate Judge order that Elliott serve her expert reports "no later than October 1, 2009." Elliott first served Soudry's expert witness report on September 14, 2009. After Givaudan's November 5, 2009, deposition of Soudry—the substance of which proved very damaging to key aspects of Deville's case—Elliott produced a new report that changed data in Soudry's original "final" report. Elliott filed the new report without notice on November 10, 2009—more than one month after the October 1 deadline. The Magistrate Judge concluded that (1) the late report violated the discovery schedule and (2) changes in the amended report were material because they rendered large portions of the expert's deposition worthless. Noting that she was particularly troubled by attorney Elliott's conduct during Soudry's deposition, the Magistrate Judge offered Elliott a choice: withdraw the offending report, or face monetary sanctions. Elliott chose the monetary sanctions.

The District Court granted summary judgment to Givaudan on Deville's age discrimination claims and her retaliation claims, under both the ADEA and the NJLAD, after determining that Deville had failed to carry her burden under McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The District Court also affirmed the Magistrate Judge's sanction order, finding it a proper exercise of discretion under the Federal Rules of Civil Procedure. Deville now appeals the District Court's entry of summary judgment, and Elliott appeals its order affirming the Magistrate Judge's sanction award. We consolidated both appeals into this proceeding.

## II.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and 29 U.S.C. § 621. We have jurisdiction pursuant to 28 U.S.C. § 1291.

When reviewing a District Court's summary judgment order, we consider legal conclusions de novo, Brisbin v. Superior Value Co., 398 F.3d 279, 285 (3d Cir. 2005), and we review factual findings for clear error, Prusky v. ReliaStar Life Ins. Co., 532 F.3d 252, 257-258 (3d Cir. 2008).

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." Bowers v. Nat'l Collegiate Athletics Ass'n, 475 F.3d 524, 538 (3d Cir. 2007).

## III.

We will affirm the District Court's order affirming the Magistrate Judge's entry of summary judgment against Deville. Although Deville alleged violations of the ADEA and the NJLAD, her burdens of pleading and production are identical under each. See McKenna v. Pac. Rail Serv., 32 F.3d 820, 827-830 (3d Cir. 1994). We agree that, under the framework set forth in McDonnell Douglas, 411 U.S. at 792, she did not bear her burden of showing pretext in the non-discriminatory explanations Givaudan gave for its decision to terminate and to not rehire Deville.

We will also affirm the District Court's order affirming the Magistrate Judge's sanction in this case, because upon review of the record we find no abuse of the Magistrate Judge's discretion.

## A.

We turn first to Deville's age discrimination claims against Givaudan. Deville's age discrimination and retaliation claims under the ADEA and under the NJLAD are governed by the burden-shifting framework set forth in McDonnell Douglas, 411 U.S. at 792. See Smith v. City of Allentown, 589 F.3d 684, 690 (3d Cir. 2009) (analyzing cases and concluding that McDonnell Douglas applies to age discrimination claims); Lehmann v. Toys 'R' Us, Inc., 132 N.J. 587, 626 (1993) (applying McDonnell Douglas to NJLAD claims).

7

Under McDonnell Douglas, plaintiffs bear the burden of proof and production to make out a prima facie case, which means they must show that (1) the plaintiff is 40 years of age or older; (2) the defendant took an adverse employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus. Smith, 589 F.3d at 690 (citing Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 370 (3d Cir. 2004)). "Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." Id. (citing Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997)). If the employer does so, the burden of production returns to the plaintiff, who must demonstrate that the employer's proffered rationale was a pretext for age discrimination. Id. at 691 (citing Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095 n.4 (3d Cir. 1995)). "At all times, however, the burden of persuasion rests with the plaintiff." Id.

Of the many contentions Deville makes in urging us to reverse the District Court's summary judgment order, only two merit discussion: her claim (1) that Givaudan eliminated her position because it was discriminating against her on the basis of age, and (2) that Givaudan retaliated against her by refusing to hire her for another position, because she told the company she had filed an EEOC charge. Although the parties make strident arguments addressing every juncture of the McDonnell Douglas framework, we will resolve this appeal at the third stage because we conclude that Givaudan offered legitimate, non-discriminatory reasons for its actions regarding Deville, and that Deville has not met her burden to show they were pretext.

Givaudan met its McDonnell Douglas burden to demonstrate legitimate, non-discriminatory reasons for eliminating Deville's position when it explained that her presentation skills were "horrendous," and that a corporate merger rendered her position redundant with that of another employee, who was better qualified, more experienced in

8

the relevant work area, had excellent presentation skills, and was also over the age of 40. See Smith, 589 F.3d at 690 (citing 411 U.S. 792). Pursuant to McDonnell Douglas and Smith, Deville therefore bore the burden of showing these reasons were pretexts for age discrimination. Id. To carry her burden, Deville produced an email from one of her supervisors. The email, which discussed a possible promotion for Deville, expressed concern that she might not be the best fit for Client A or for Givaudan, and warned that (considering her age) promoting her now might make it difficult to change her position in the future. (App. 5-6 ("By promoting her we are reinforcing that she is doing a great job which, when combined with her age and her gender, will make it very difficult to make a change.").)

We agree with the District Court that the frank assessment set forth in the email was not probative of actual intent to discriminate. It was merely a prediction in which its author noted correctly that it is difficult to terminate employees in protected classes. The email would not allow a reasonable jury to conclude that Givaudan's decision to hire a more experienced, better educated, middle-aged employee who had better presentation skills, was motivated by animus against persons over 40 years of age.

Givaudan also met its McDonnell Douglas burden to demonstrate legitimate, non-discriminatory reasons for its decision not to hire Deville for the New York sales position. In November of 2007, Deville (who holds no college degree) interviewed with Givaudan for a position advertised as requiring a bachelor's degree, and preferring a master's degree. At the interview she stated that she had filed an EEOC charge against Givaudan. (In fact, she had not done so; she had completed an intake form with the EEOC, but did not lodge her complaint until approximately one month after the interview.) Givaudan asserts that it did not hire Deville because she was unqualified— after interviewing several candidates, it selected a woman with a master's degree.

Because the reasons Givaudan has articulated are legitimate and non-discriminatory, the burden shifts back to Deville, Smith, 589 F.3d at 690 (citing 411 U.S.

9

792), who must produce evidence that "prove[s] by a preponderance of the evidence that the articulated reasons are a pretext for discrimination," Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 n.1 (3d Cir. 2001). To do so, Deville contends that because she told the interviewer she had filed an EEOC charge, there is a genuine issue of material fact as to whether the company refused to hire her because she did not possess the necessary college degree. We disagree. No reasonable jury could conclude, based on Deville's misleading statements about her EEOC filing, that she was indeed qualified for the position: the job "required" a bachelor's degree and it "preferred" a master's degree, neither of which she held. Nothing she said, or could have said, during the interview casts doubt on those facts, much less shows "by a preponderance of the evidence" that Givaudan used her lack of qualification as a pretext. Id. The District Court therefore determined correctly that Deville had not met her burden of production.

Because we conclude that Deville did not bear her McDonnell Douglas burden of producing evidence sufficient to support a jury finding that Givaudan gave pretextual reasons for its decision to eliminate her position and for its decision not to re-hire her, we will affirm the District Court's summary judgment order.

**B.**

The second issue before us is attorney Vanessa R. Elliott's contention that the Magistrate Judge abused her discretion in imposing sanctions for discovery-related misconduct in this case. Our standard of review is highly deferential; a district court abuses its discretion in imposing sanctions when it bases its ruling (1) "on an erroneous view of the law" or (2) "on a clearly erroneous assessment of the evidence." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990).

As a threshold matter, the Magistrate Judge in this case did not make a "clearly erroneous assessment of the evidence." Id. The record fully supports the Magistrate Judge's findings that, in addition to filing documents that materially changed a key expert witness's testimony after his deposition and outside the court-approved filing deadline,

10

Elliott behaved in an abusive, unprofessional, and obstructionist manner during the deposition itself. (See App. 15-17.) We also have no difficulty in agreeing with the Magistrate Judge that Elliott's conduct was "unprofessional and completely objectionable" (App. 32), and "completely unacceptable, and . . . contrary to the rules of civil procedure," (App. 30). We have no doubt that Elliott acted as "a person who impedes, delays, or frustrates the fair examination of the deponent." Rule 30(d)(2).

The remaining question is whether the District Court "based its ruling on an erroneous view of the law." Cooter, 496 U.S. at 405. We conclude that it did not. The Magistrate Judge applied sanctions under Rule 37(b)(2)(C) ("Failure to Comply with a Court Order") (see App. 34), which permits:

> Payment of Expenses. Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Rule 37(b)(2)(C) (emphasis added). Elliott's primary argument is that the Magistrate Judge and the District Court did not properly consider whether her failure to comply with discovery rules was "substantially justified." We disagree.

This Court held in United States v. Grider, 580 F.3d 119 (3d Cir. 2009), that when the text of a sanction rule provides that parties may be sanctioned if their behavior lacks "substantial justification," district courts must make express rulings upon whether the offending party's conduct was "substantially justified." Id. at 139 (vacating Rule 26(g) sanctions because the trial court "failed to analyze the 'substantial justification' standard expressly articulated in the Rule"); id. at 140 (vacating Rule 37(c)(1) sanctions for the same reason). We vacated the sanction award in that case because there was "nothing in [the district court's opinion] that discusse[d] the contours of this standard or explain[d] the ways in which the Appellants' legal positions were not substantially justified." Id. at

11

139. <u>Grider</u> therefore provides that District Courts may not apply sanctions under Rules 26 and 37 without considering whether the sanctioned conduct was "substantially justified."

We conclude that the Magistrate Judge's oral opinion applying Rule 37(b)(2) satisfied <u>Grider</u>'s requirements. Rule 37(b)(2) states that sanctions are appropriate unless the sanctionable conduct was "substantially justified." Elliott asserts she had "substantial justification" to file the late report for two reasons: (1) the alterations made to the expert report were non-sanctionable because they were "corrections" and "<u>de minimus</u> [sic]," and (2) her Federal Rule of Civil Procedure 26(e) duty to supplement or correct her prior filings obliged her to file the report. Under <u>Grider</u>, she must persuade us that the Magistrate Judge did not adequately consider these asserted justifications.

The Magistrate Judge did consider these justifications. She made an express finding that the correction amounted to an alteration of material facts within the expert's report. (App. 31.) Elliott's own conduct confirms this finding: the Magistrate Judge offered to allow her to avoid monetary sanctions by withdrawing the amended report (App. 33-34), but Elliott declined—something she would not have chosen to do if the report's amendments were in fact "de minimis" corrections. The Magistrate Judge therefore made an express ruling upon Elliott's first "substantial justification" argument, as <u>Grider</u> requires.

The Magistrate Judge also considered Elliott's second asserted justification, and made an express finding that Rule 26(e) did not justify her conduct in this case. (App. 32.) The Magistrate Judge explained that the proper procedure for an attorney who wishes to violate a scheduling order is to ask the court for leave. (<u>Id.</u> ("What I would expect a lawyer familiar with procedure in this court do to is send a letter to me explaining the situation and asking permission to service a report—a supplemental report out of time . . .").) The Magistrate Judge ruled that even if Rule 26(e) required Elliott to submit further filings in this case, it did not excuse her from asking the court's permission

to violate a standing order. The Magistrate Judge therefore made an express ruling upon Elliott's second "substantial justification" argument, as Grider requires.

Finally, we note the Magistrate Judge's remarks to the effect that she had authority under Rule 30 to sanction for the deposition conduct. Although the Magistrate Judge's oral opinion is unclear as to whether she rendered her sanctions pursuant to Rule 30 as well as to Rule 37, it certainly would have been within her discretion to do so. Rule 30(d)(2) provides:

> The court may impose an appropriate sanction—including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent.

The Magistrate Judge made extensive findings that Elliott violated Rule 30 when she testified on behalf of her witness by way of suggestive speaking objections. (See App. 27, 30, 31, 32.) Under Rule 30(d)(2), the Magistrate Judge had authority to impose an "appropriate sanction" for this conduct. See Hall v. Clifton Precision, 150 F.R.D. 525 (E.D.P.A. 1993). Her findings, in light of the authority granted to her by Rule 30(d)(2), confirm our conclusion that it was within the Magistrate Judge's discretion to impose sanctions in this case.

At bottom, sanctions awards are discretionary rulings committed to the judges who are most familiar with the parties and their conduct. Bowers v. Nat'l Collegiate Athletics Ass'n, 475 F.3d 524, 538 (3d Cir. 2007) ("The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court.") We do not reverse them lightly—particularly in cases like this one, where the issue has been twice reviewed and carefully considered by the two trial judges most intimate with the discovery process in the case at bar. We conclude that Elliott has not demonstrated that both of those judges abused their discretion. We will therefore affirm the District Court.

* * * * *

13