**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 14-3385 & 14-3386

_____

In re: TRADE SECRET INC., et al


REGIS CORPORATION,
Appellant

v.

SOUTHERN EL DORADO CORPORATION,
f/k/a HOUSTON BW INC.

(Amended pursuant to the Clerk's Order entered 09/08/2014)

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(Nos. 1:12-cv-00854 & 1:13-cv-00291)
District Judge: Hon. Leonard P. Stark

_____

Submitted Under Third Circuit LAR 34.1(a)
June 4, 2015

_____

Before: FISHER, JORDAN, and SHWARTZ, <u>Circuit Judges</u>.

(Opinion Filed:  June 10, 2015)

_____

OPINION[*]

_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SHWARTZ, Circuit Judge.

Regis Corporation ("Regis") purchased the assets of Trade Secret, Inc. and its affiliates (collectively, the "Debtors") in bankruptcy. Thereafter, the Bankruptcy Court held Regis liable for damages awarded against the Debtors in an arbitration proceeding and for attorneys' fees. The District Court affirmed. For the reasons set forth herein, we will affirm.

I

The Debtors owned and operated a beauty salon franchise system. Houston BW, Inc. ("Houston") was a franchisee pursuant to two franchise agreements (the "Franchise Agreements"). Around 2008, Houston informed the Debtors that it intended to pursue arbitration to terminate the Franchise Agreements, citing multiple grievances. The Debtors agreed to participate in the arbitration, but threatened to close Houston's salons in the meantime. Houston obtained a temporary restraining order ("TRO") in Kansas state court that prevented closure pending the outcome of the arbitration proceeding.

Thereafter, the Debtors filed for bankruptcy. The Bankruptcy Court entered an order authorizing the sale of the Debtors' assets (the "Sale Order") to Regis, which was defined in both the Sale Order and Asset Purchase Agreement ("APA") as "the 'Purchaser.'" See App. 476-508. Under the APA, Regis acquired the Debtors' assets and liabilities and then assigned them to two companies (the "Assignees") in which Regis assumed a security interest. The APA specified that, following the assignment, Regis would be "relieved of all liability and obligation." App. 714.

2

After the sale was completed, the Debtors moved to dismiss the bankruptcy case (the "Dismissal Motion"). Houston objected, contending that there was no assurance that its "rights and claims to payment" in the pending arbitration would be preserved. App. 864. The Debtors submitted a revised draft order "clarify[ing] the effect of the dismissal of the Chapter 11 [c]ases on the pending arbitration." App. 869. The Bankruptcy Court entered the revised order (the "Dismissal Order"), which provides:

> The Purchaser hereby agrees that the [Franchise Agreements] by and between the Debtors and [Houston and other franchisees] (collectively, the "Franchisees") . . . shall be deemed assumed and assigned to the Purchaser; provided, however, that the Purchaser, its successors and assigns shall[] pay, in satisfaction of any cure obligations pertaining to the assumption and assignment of the [Franchise Agreements,] any and all amounts as may be awarded, if any, to the Franchisees in connection with any pending [a]rbitration [p]roceeding . . . as may be ordered in the [a]rbitration [p]roceeding . . . . Should Purchaser, its successors and assigns, fail to pay the cure amount awarded within 30 days of the entry of any order in the [a]rbitration [p]roceeding . . . , this Court shall retain the jurisdiction to enforce the payment of same.

App. 883-84. The Dismissal Order does not define "Purchaser," but states that all terms not defined therein "shall be given the meanings ascribed to them in the [Dismissal] Motion." App. 882 n.2. The Dismissal Motion, in turn, refers to "Regis Corporation ('Regis') and Regis's assignees, Pure Beauty Salons & Boutiques, Inc. and BeautyFirst Franchise Corp. "as 'the Purchaser'." App. 658.

Six months after the entry of the Dismissal Order, the arbitrator found that the Debtors had breached the Franchise Agreements and awarded Houston approximately $317,000 in damages (the "Arbitration Award"). Houston filed notice of the Arbitration Award in the Bankruptcy Court, seeking payment from the "Purchaser, its successor and

3

assigns" in accordance with the Dismissal Order. App. 890. Houston then contacted Regis directly, noting that the Assignees, who would soon declare bankruptcy, had refused to pay, and asserting that Regis was liable for the full amount as the "Purchaser" under the Dismissal Order. Regis denied that it was the "Purchaser" and disclaimed any liability. Houston moved to enforce the Dismissal Order in the Bankruptcy Court, arguing that Regis is "included within the term 'Purchaser' who [is] liable to Houston for any awards." App. 917.

Houston also moved for attorneys' fees and expenses incurred in connection with its efforts to collect payment of the Arbitration Award. In its motion, Houston asserted that, under the "Fees and Expenses" provisions of the Franchise Agreements, App. 1291-97, it was the prevailing party entitled to reimbursement by the "losing party" for fees and expenses. App. 1132, 1181.

The Bankruptcy Court granted both motions. With respect to the motion to enforce, it held that "Regis was the 'Purchaser' in the Dismissal Order and is therefore liable to Houston, jointly and severally." App. 20. With respect to the motion for attorneys' fees, it held that under the Franchise Agreements and Kansas law, Regis is liable to Houston for fees and expenses. App. 25-26. It also concluded that, having "very carefully reviewed Houston's application," the fees and expenses requested were "reasonable, necessary and appropriate." App. 26.

The District Court affirmed and Regis appeals.

4

II[1]

Regis argues that the Bankruptcy Court misinterpreted the Dismissal Order by concluding that Regis was the "Purchaser" purportedly liable for the Arbitration Award. Regis also challenges the attorneys' fees the Bankruptcy Court ordered it to pay. We address these arguments in turn.

A

"[B]y virtue of its direct involvement in the proceedings," we "accord[] great weight" to a bankruptcy court's interpretation of its own order. In re Shenango Grp. Inc., 501 F.3d 338, 346 (3d Cir. 2007). Accordingly, we review the Bankruptcy Court's interpretation of its Dismissal Order for abuse of discretion, and "will defer to [such] interpretation unless it is unreasonable under the circumstances." Id.

The Dismissal Order plainly provides that "the Purchaser . . . shall[] pay . . . any and all amounts as may be awarded, if any, to the Franchisees in connection with any pending [a]rbitration [p]roceeding . . . as may be ordered in the [a]rbitration [p]roceeding." App. 884. The Dismissal Order also provides that all terms not defined therein, like "Purchaser," are to "be given the meanings ascribed to them in the

---

[1] The Bankruptcy Court had jurisdiction under 28 U.S.C. § 157(b). The District Court had jurisdiction under 28 U.S.C. § 158(a) and we have jurisdiction under 28 U.S.C. §§ 158(d) and 1291. "We exercise plenary review of an order from a district court sitting as an appellate court in review of a bankruptcy court," In re Exide Techs., 607 F.3d 957, 961-62 (3d Cir. 2010), and thus our review here "effectively amounts to review of the [B]ankruptcy [C]ourt's opinion in the first instance," In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989). Generally speaking, we review a bankruptcy court's "legal determinations de novo, its factual findings for clear error, and its exercises of discretion for abuse thereof." In re Miller, 730 F.3d 198, 203 (3d Cir. 2013) (internal quotation marks omitted).

[Dismissal] Motion." App. 882 n.2. The Dismissal Motion, in turn, defines "Purchaser" to include Regis. See App. 658 (referring to "Regis Corporation ('Regis') and Regis's assignees, Pure Beauty Salons & Boutiques, Inc. and BeautyFirst Franchise Corp." as "the 'Purchaser'"). Thus, the Dismissal Order, read together with the Dismissal Motion, indicates that Regis, as "Purchaser," is liable for "any and all amounts" awarded to the "Franchisees," including Houston, in the arbitration proceeding. "[W]here the plain terms of a court order unambiguously apply[,] . . . they are entitled to their effect." Travelers Indem. Co. v. Bailey, 557 U.S. 137, 150 (2009). Accordingly, we hold that the Bankruptcy Court did not abuse its discretion in enforcing the unambiguous terms of the Dismissal Order and concluding that Regis is liable for the Arbitration Award.[2]

B

We next address the Bankruptcy Court's order granting Houston's motion for attorneys' fees and expenses. Regis argues that: (1) the Bankruptcy Court erred in finding that Regis assumed the Franchise Agreements; (2) the plain terms of the "Fees and Expenses" provisions limit reimbursement to fees associated with the commencement of the arbitration; and (3) the sum awarded is unreasonable. At the outset, we note that the Dismissal Order clearly states that "[t]he Purchaser hereby agrees

---

[2] Regis is also defined as the "Purchaser" in the Sale Order and the APA. We acknowledge that the APA contemplated Regis's immediate assignment of the Debtors' assets and liabilities and purported to relieve Regis of "all liability and obligation." App. 714. To the extent the Bankruptcy Court "re-wrote the transaction which it approved" by imposing liability on Regis, as Regis argues, Appellant Br. 30, it did so in the Dismissal Order, not the order granting Houston's motion to enforce it. While Regis may challenge the latter order, it is, at this stage, precluded from challenging the former, as the time to appeal the Dismissal Order has passed, see Fed. R. Bankr. P. 8002(a)(1), and it is res judicata, Bailey, 557 U.S. at 152-53.

6

that the [Franchise Agreements] . . . shall be deemed assumed and assigned to the Purchaser." App. 883-84. Having determined that Regis is the "Purchaser" as that term is used in the Dismissal Order, we find no fault with the Bankruptcy Court's conclusion that Regis assumed the Franchise Agreements and is thus subject to their terms, including the "Fees and Expenses" provisions.

We next determine whether the Bankruptcy Court correctly construed the provisions and whether the fees and expenses it awarded are reasonable. We give plenary review to a bankruptcy court's construction of contract provisions. Ram Const. Co. v. Am. States Ins. Co., 749 F.2d 1079, 1053 (3d Cir. 1984). The Franchise Agreements are governed by Kansas law, which permits a court to award attorneys' fees where, as here, they are "provided for by contract." Farmers Cas. Co. v. Green, 390 F.2d 188, 192 (10th Cir. 1968).

The "Fees and Expenses" provisions provide:

> [S]hould any party hereto commence any action or proceeding . . . whether by arbitration, judicial or quasi-judicial action or otherwise, or for damages for any alleged breach of any provision hereof, or for a declaration of such party's rights or obligations hereunder, then the prevailing party shall be reimbursed by the losing party for all costs and expenses incurred in connection therewith, including, but not limited to, reasonable attorneys' fees for the services rendered to such prevailing party.

App. 1132, 1181. Regis would have us read this language such that "in connection therewith" modifies "commence any action or proceeding," and that fees "not incurred in connection with the 'commencement of an action' . . . [are] not recoverable." Appellant Br. 40. We reject this tortured interpretation. The "commence any action or proceeding"

7

language reflects the event that triggers the application of the provision and makes clear that it only applies if a dispute resolution mechanism is initiated. The remainder of the provision explains the circumstances when fees and expenses will be paid and who is obligated to pay them. Thus, the more sensible reading is that "in connection therewith" modifies "action or proceeding," and therefore, under the Franchise Agreements, the prevailing party is entitled to fees and expenses incurred in connection with the action or proceeding generally, not merely its commencement. Accordingly, we conclude that the Bankruptcy Court's conclusion that Houston is entitled to fees and expenses related to the Arbitration Award is correct.

With respect to the reasonableness of the fees and expenses awarded, we review the Bankruptcy Court's conclusions for abuse of discretion. Potence v. Hazleton Area Sch. Dist., 357 F.3d 366, 374 (3d Cir. 2004). "The party seeking attorneys' fees has the burden to prove that its request is reasonable," and it "must submit evidence to support the hours and billing rates it claims." Id. Consistent with this obligation, Houston provided a detailed breakdown of the hours billed in connection with its efforts to collect payment of the Arbitration Award, and the rates that applied. Houston incurred fees and expenses associated with post-arbitration motions, including motions to vacate the Arbitration Award and to block the return of the funds Houston posted with the Kansas state court when it obtained the TRO. It also expended resources monitoring the Assignees' bankruptcy proceedings, making demands on Regis for payment, and pursuing payment from Regis via the motion to enforce. Given that the "Fees and Expenses" provisions provide that the losing party is liable for "all costs and expenses"

8

incurred in connection with proceedings for damages, App. 1132, 1181, which reasonably involve collection of them, we cannot say that the Bankruptcy Court abused its discretion in concluding that the fees and expenses requested by Houston were "reasonable, necessary and appropriate," App. 26, or, given the language of the Dismissal Order, in ordering Regis to pay them.[3]

## III

For the foregoing reasons, we will affirm the order of the District Court affirming the Bankruptcy Court's orders granting Houston's motions to enforce and for attorneys' fees.

---

[3] Regis also contests the reasonableness of the fees on the grounds that a portion of them "related to proceedings in other jurisdictions," Houston redacted several time sheet entries, and Houston improperly sought "fees for seeking payment of fees." Appellant Br. 42-43. These arguments are unavailing. First, the Franchise Agreement does not prohibit a party from obtaining fees for work performed outside of the arbitration that were related to it. The only limiting factor imposed therein is the "in connection therewith" language, which is satisfied here since Houston's post-arbitration efforts were to collect the Arbitration Award. Second, as Regis concedes, the Bankruptcy Court received unredacted time sheet entries, and thus was fully capable of assessing the reasonableness of the fees. Third, Kansas law generally permits reimbursement for "[f]ees incurred litigating the amount of attorney fees," see Moore v. St. Paul Fire Mercury Ins. Co., 3 P.3d 81, 86 (Kan. 2000) (holding that "fees for fees" is permissible under Kansas fee-shifting statute), and thus the Bankruptcy Court correctly granted reimbursement for this activity.

9