**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 17-1041

———————

NANCY L. SMITH,
                                        Appellant

v.

N3 OCEANIC, INC.

———————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-16-cv-00730)
District Judge: Honorable Berle M. Schiller

———————

Submitted Under Third Circuit L.A.R. 34.1(a)
September 27, 2017

———————

Before: SMITH, *Chief Judge*, McKEE, and RESTREPO, *Circuit Judges*.

(Opinion Filed:  November 22, 2017)

———————

OPINION*

———————

RESTREPO, *Circuit Judge*.

---

    * This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Nancy Smith appeals the District Court's grant of summary judgment to N3 Oceanic, Inc., her former employer, in her suit for age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"). We will affirm.

**I**

As we write solely for the benefit of the parties, we set out only the facts necessary for the discussion that follows.[1] From February 2004 until September 2014, Smith was employed by N3 Oceanic, Inc. as a Customer Service Representative ("CSR"). **App. 192**. During her 10-year-long tenure with the company, N3's management regarded Smith as a good employee with some recurring issues related to her demeanor. **App. 334.** Emails among N3's management document incidents when Smith reacted unprofessionally to instructions or events, describing her as "argumentative," "disagreeable," and "angry." App. 382, 384. At the time of her firing, Smith was 70 years old, the oldest CSR employed by N3. **App. 334**.

Several months before her termination, N3 changed its employee health benefits to an age-based policy, such that healthcare premiums paid by employees would correlate with the employee's age.[2] **App. 337.** In August 2014, because of the increase in costs, Smith waived her health benefits, writing "cannot afford – discrimination!" on the waiver

---

[1] For the purpose of this appeal, the facts described are undisputed or viewed in the light most favorable to Smith.

[2] N3 changed from a four-tier health insurance policy in which the tiers were determined by the number of people insured (self, self plus spouse, self plus children, etc.) and all employees paid the same amount for each tier regardless of age, to an age-based policy in which the employee's premiums were determined by the employee's age at the time the policy came into effect. App 337.

form. **App. 370.** N3's management was aware of Smith's comments on the form. **App. 337.**

On September 6, 2014, N3 received an email from a disgruntled customer with the subject line "My last purchase with [N3]" complaining of misleading and inconsistent promotional pricing. App. 200. He noted in the email that the CSRs shared his frustration but had told him that their concerns "f[ell] on deaf ears with management." *Id*. N3 then traced the customer's last order in its ordering database and found that Smith had handled the order. **App. 310.** Although N3 was unable to prove that Smith had made the disparaging remarks about management to the customer, Smith's supervisor believed that they were consistent with comments that Smith had previously made about pricing and promotions. **App. 247-48.** Over the course of the next week, N3 hired an 18-year-old woman as a CSR and fired Smith. **App. 197, 245.**

In her complaint against N3, Smith alleged a violation of the ADEA based on age discrimination and retaliation for protected conduct. The District Court granted N3 summary judgment on both of Smith's claims. This timely appeal followed. We will address each claim in turn.

**II**[3]

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 621. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our standard of review of a grant of summary judgment is plenary. *NAACP v. City of Phila.*, 834 F.3d 435, 440 (3d Cir. 2016). We apply the same summary judgment standard as the District Court. *See Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 218 (3d Cir. 2015). That standard required the Court to grant summary judgment where, with inferences drawn in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any

The ADEA makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). In assessing a claim of age discrimination under the ADEA, courts employ the *McDonnell Douglas* burden-shifting framework. *Walton v. Mental Health Ass'n. of Se. Pa.*, 168 F.3d 661, 667-68 (3d Cir. 1999) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). A plaintiff alleging employment discrimination under the ADEA must make a prima facie case with four elements: (1) she is over 40 years old; (2) she is qualified for the position; (3) she suffered from an adverse employment decision; and (4) her replacement was sufficiently younger to permit a reasonable inference of age discrimination. *Potence v. Hazleton Area Sch. Dist.*, 357 F.3d 366, 370 (3d Cir. 2004). Under the burden-shifting framework, once the plaintiff makes out a prima facie case, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the employer demonstrates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the employer's stated reason was pretextual. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644-45 (3d Cir. 2015).

The District Court found that Smith made a prima facie case and that N3 articulated legitimate, nondiscriminatory reasons for the firing by citing the customer complaint and Smith's occasional lack of professionalism. Neither of these findings is

---

material fact and the movant is entitled to judgment as a matter of law." *Id*. at 218; *see also* Fed. R. Civ. P. 56(a).

4

disputed by the parties. The District Court granted summary judgment to N3 after conluding that she had failed to show that N3's reasons were pretextual. Smith challenges this conclusion on appeal.

The third and final step of the *McDonnell Douglas* framework requires the plaintiff to demonstrate that the presumptively valid reasons for her rejection dissembled a discriminatory decision. *McDonnell*, 411 U.S. at 805. Plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). "[S]ince the factual dispute at issue is whether discriminatory animus motivated the employer," not whether the employer's decision was wrong or mistaken, the plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons that a reasonable factfinder could rationally find them 'unworthy of credence.'" *Id.* at 765 (emphasis omitted) (citation omitted).

Smith fails to offer evidence which would cast doubt on N3's articulated reasons or suggest N3's decision was motivated by "discriminatory animus." *Id*. Smith contends that N3 neither formally disciplined her for unprofessional conduct nor identified specific examples of such conduct. Neither of these arguments, however, address the incidents documented in N3's internal emails over the course of Smith's employment. Similarly, while Smith denies making critical remarks about N3's management to customers, it was reasonable for N3 to conclude based on Smith's past comments and the customer's order

history that she made the statement alleged in the email. Because she is unable to show that N3's legitimate reasons were pretextual, Smith's discrimination claim must fail.

**III**

Under the *McDonnell Douglas* framework, a plaintiff asserting a retaliation claim under the ADEA must establish a prima facie case by showing: (1) she was engaged in protected activities; (2) the employer took an adverse employment action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Protected activities include not only an employee's filing of formal charges of discrimination against an employer but also "informal protests of discriminatory employment practices, including making complaints to management." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). If the plaintiff makes these showings, the burden of production shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action. *Id*. (citation omitted). "If the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id*. (citation omitted).

6

Smith established a prima facie case. First, her comment ("cannot afford-discrimination!") on her waiver form qualifies as a protected activity. Given the increase in health premiums because of her age, a jury could reasonably conclude that Smith intended her comments to be an "informal protest" expressing to management her belief that she had suffered discrimination on the basis of her age. *Id*. Her supervisor testified that "there were conversations . . . about what [the comment] meant." App. 337. As to the second element, Smith's termination of employment qualifies as an adverse employment action. Lastly, a jury could reasonably conclude that the timing of the termination, approximately one month after she submitted the waiver form, in light of Smith's unblemished formal disciplinary record, satisfies the third element in establishing a causal link between the protected activity and the adverse action.

N3, however, presented a legitimate, non-retaliatory reason for the adverse action by once more citing the customer complaint and Smith's history of unprofessional behavior. As discussed in greater detail above, Smith failed to rebut N3's claim that it fired her because she disparaged N3's management to a customer, which served as the culmination of a documented history of occasionally unprofessional behavior. Thus, Smith's retaliation claim must fail.

**IV**

For the foregoing reasons, we will affirm the District Court's grant of summary judgment to N3.